**IN THE UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION**

In re:

GRANITE XPERTS, INC.

Debtor.

Chapter 11
Case No. 08B-26883
Hon. Jack B. Schmetterer

# FINAL ORDER REGARDING USE OF CASH COLLATERAL AND ADEQUATE PROTECTION

This matter coming to be heard upon the scheduled hearing on the entry of a Final Order Regarding Use of Cash Collateral and Adequate Protection ("Final Order"), an Interim Order Regarding Use of Cash Collateral and Adequate Protection ("Interim Order") having been entered on October 20, 2008, the terms of which having been continued and extended by further Orders, authorizing Granite Xperts, Inc., Debtor and Debtor-In-Possession ("Debtor") to use cash collateral and granting adequate protection to National Bank of Commerce ("National Bank") and the Taxing Authorities (defined below); due and proper notice of the final hearing on Debtor's use of cash collateral and granting of adequate protection, in accordance with Bankruptcy Rule 4001, having been given to all parties entitled thereto, including the Office of the United States Trustee, National Bank, the Taxing Authorities, all other parties asserting an interest in the Debtor's cash collateral and the list of 20 largest unsecured creditors; the Court being fully advised in the premises, and

THE DEBTOR HAVING STIPULATED AS FOLLOWS:

A. This matter is a "core proceeding" which the Court may hear and determine within the meaning of 28 U.S.C. 157(b).

B. The Debtor filed its petition for relief under Chapter 11 of Title 11, U.S.C. (the "Petition"), on October 7, 2008, and pursuant to Sections 1107 and 1108 of the Bankruptcy Code

has remained in possession of its assets and is authorized as Debtor- in-Possession to continue the operation of its business, without a trustee having been appointed.

C. The Debtor is a corporation, organized and existing under the laws of the state of Illinois and headquartered in Elk Grove Village, Illinois. The Debtor is a fabricator and installer of solid surface countertops, such as marble and granite. The Debtor serves residential and commercial customers in Illinois, Michigan, Wisconsin and Indiana.

D. The Debtor has a continuing need for cash in order to pay wages and to make other expenditures for the operation of its business.

E. The Debtor is indebted to National Bank in the principal amount of approximately $1,206,858.71 as of the Petition Date (the "National Bank Pre-Petition Claim") on account of a certain promissory note in the original principal amount of $862,500 dated April 12, 2007 ("Note 1") and a certain promissory note in the original principal amount of $370,000 dated April 12, 2007 ("Note 2" and together with Note 1, the "Notes") (Local Rule 4001-2).

F. Mario Rizzi asserts that the Debtor is indebted to him in the principal amount of approximately $300,000 as of the Petition Date, pursuant to that certain Secured Promissory Note and Mortgage dated April 12, 2007 and recorded on April 23, 2007 as Document No. 0711335288 (the "Rizzi Pre-Petition Claim") and further asserts that its Mortgage is subject only to Note 1 as defined in Paragraph E above in the amount of $862,500.

G. Mario Rizzi further claims that he holds a valid second mortgage on the Property (defined below) subject only to Note 1 and that Note 2 and the security therefore is subordinate to the claims of Mario Rizzi.

H. The Notes to National Bank are secured by, among other things, (i) a Mortgage dated April 12, 2007, executed by the Debtor against the property commonly known as 1400 N. Nicholas Blvd., Elk Grove Village, Illinois ("Property") and recorded with the Recorder of Deeds of Cook County, Illinois on April 23, 2007 as Document No. 0711335286; (ii) a Commercial Security Agreement dated April 12, 2007, executed by the Debtor, granting the Bank a security interest in substantially all of the Debtor's assets (the "Security Agreement"); and (iii) a Uniform Commercial Code financing statement recorded with the Secretary of State of Illinois on May 18, 2007 as document No. 01213701, perfecting such security interest. The Notes are further secured by certain real property owned by Antonio Guida ("Guida") and Mary Pahlke ("Pahlke"), Vito Guarino is the president of the Debtor. Guida, Pahlke, Mary Pannarale and Guarino personally guaranteed the Notes pursuant to Commercial Guaranties dated April 12, 2007. The Notes, Mortgage, Guaranties, Security Agreement and all other loan documentation between the Debtor and National Bank are hereby referred to as the "Loan Documents").

I. Pursuant to the Loan Documents, National Bank asserts, the Debtor acknowledges and Mario Rizzi and MAC Funding Corporation dispute that National Bank has a valid, first priority, protected and subsisting security interest in and lien upon substantially all of the assets of the Debtor (the "National Bank Pre-Petition Liens") including its inventory, chattel paper,

accounts, equipment, general intangibles, consumer goods and fixtures, and all proceeds thereof as of the date of the filing of the bankruptcy petition (the "Collateral").

J. The Internal Revenue Service ("IRS") has filed several tax liens against the assets of the Debtor in the aggregate amount of $137,269.55 for alleged unpaid employment taxes.

K. The Illinois Department of Employment Security ("IDES") has filed several tax liens against the Debtor in the aggregate amount of $1,881.57 for alleged unpaid employment taxes. The IRS and IDES are jointly referred to as the "Taxing Authorities."

L. As a result of the tax liens recorded by the Taxing Authorities, the Taxing Authorities may also assert a security interest in and lien upon the Collateral.

M. The Debtor has an immediate need for funds in order to continue the operation of its business, and use of the cash collateral is the only source of funds available to allow the Debtor to satisfy its normal and ordinary business expenses and continue its business operations.

N. National Bank has indicated it is unwilling to permit the Debtor to use its cash collateral except in accordance with the terms and conditions set forth herein.

O. The terms and conditions of the proposed final order ("Final Order") authorizing the use of cash collateral are fair and equitable, and are necessary for the continuing operation of the Debtor's business, and will further the possibility of a successful reorganization. Entry of this Final Order is therefore in the best interest of the Debtor, its creditors and the estate.

IT IS THEREFORE ORDERED AND DECREED:

1. The Debtor is hereby authorized on a final basis to use the Collateral, whether existing as of the date of the filing of the Petition or arising thereafter, conditioned upon the use of cash collateral being limited to the payment of the items enumerated on the budget attached hereto as Exhibit A ("Budget") which are ordinary and necessary business expenses necessary to the continuing operation of its day-to-day business. The Debtor shall be entitled to deviate from the Budget in an amount up to ten (10%) percent of each item listed in the Budget in order to effectively operate its business during this bankruptcy proceeding.

2. Such authority granted by this Order to the Debtor to use cash collateral shall cease upon the occurrence of a Termination Event. A Termination Event shall mean any of the

following: (i) the occurrence of any non-monetary breach of the terms of this Order by the Debtor, and the Debtor's failure to cure within three (3) business days after written notice to Debtor's counsel; (ii) the occurrence of any monetary breach of the terms of this Order by the Debtor, and the Debtor's failure to cure within one (1) day written notice to Debtor's counsel; (iii) appointment of a Chapter 11 trustee or examiner; (iv) conversion of the case to Chapter 7; (v) the effective date of a confirmed Chapter 11 plan of reorganization; or (v) dismissal of the bankruptcy case.

3. In the event of a Termination Event, the Debtor's authority to use cash collateral shall cease. However, nothing in this Order shall affect or impair the rights of the Debtor with respect to the future use of cash collateral upon further Order of this Court, nor shall such termination impair the validity or enforceability of any security interest or lien granted to National Bank and/or the Taxing Authorities under this Order. Notwithstanding any other provision of this Order, and without further order of Court, National Bank may: (i) upon the occurrence of any non-monetary breach of the terms of this Order by the Debtor, terminate its consent to Debtor's continued use of its cash collateral three (3) business days after written notice to Debtor's counsel, and (ii) upon the occurrence of any monetary breach of the terms of this Order by the Debtor, terminate its consent to Debtor's continued use of its cash collateral one (1) day after written notice to Debtor's counsel.

4. Notwithstanding anything contained in this Order, MAC Funding Corporation ("MAC") shall retain whatever interest MAC had in a certain Mitsubishi/Waterjet brand waterjet cutting system (the "MAC Equipment") in Debtor's possession, to the same extent and with the same validity and priority that MAC had with respect to the MAC Equipment as of the Petition Date. The entry of this order shall not adversely affect MAC's priority, enforceability and

validity of its security interests in and to the MAC Equipment, as existed as of the Petition Date. National Bank and Debtor each confirm, acknowledge, and agree that (i) debtor has granted in favor of and to MAC security interests, liens and encumbrances in and to the MAC Equipment (the "Security Interests of MAC"), which Security Interests of MAC have been perfected by appropriate filing or otherwise; (ii) that the Security Interests of MAC are and remain in full force and effect, as amended to date; and (iii) the MAC Equipment are, and shall continue to be and remain, subject to the Security Interests of MAC. Furthermore, National Bank confirms, acknowledges and agrees that any security interest, lien and/or encumbrance which National Bank may possess, hold or have been granted to it by Debtor in National Bank's favor as to the MAC Equipment, whether granted on a pre-petition or post-petition basis, by and through the Loan Documents, this Order, any prior order of this Court, or otherwise, is subordinate, junior and inferior and postponed in priority, operation and effect to the priority, operation, and effect of the Security Interests of MAC in and to the MAC Equipment.

5. Notwithstanding anything contained in this Order, Mario Rizzi ("Rizzi") shall retain its interest in the Property pursuant to its Secured Promissory Note and Mortgage, to the same extent and with the same validity and priority that Rizzi had with respect to the Property as of the Petition Date.

6. To provide adequate protection within the meaning of Sections 361 and 363 of Title 11, to National Bank and the Taxing Authorities with respect to their respective interests in the Collateral, the Debtor: (a) grants to National Bank and the Taxing Authorities to the extent of the Debtor's use and consumption of the cash collateral, a respective post-petition security interest and lien ("Replacement Lien") in or upon all present and future inventory, chattel paper, accounts, equipment, general intangibles, consumer goods and fixtures of the Debtor-in-

Possession, being the same kind and type of asset in or upon which National Bank and/or the Taxing Authorities respectively hold a valid, perfected and enforceable security interests or liens as of the date of commencement of the Petition, and all proceeds and products thereof; (b) the Replacement Lien shall be valid and effective without filing or further action; (c) the Replacement Lien shall remain in full force and effect upon conversion or dismissal of this case; and (d) Debtor shall make adequate protection payments to National Bank in the amounts of $8,564.00 per month (for the Mortgage interest), $2,020 per month (for the term loan interest) and $5,969.00 per month (for mortgage escrow payments). Under no circumstances shall National Bank or the Taxing Authorities have a lien on any of the Debtor's assets that it did not have a right to prepetition. The granting of the Replacement Lien as aforesaid shall not negatively affect any rights and/or priorities of MAC in and to the MAC Equipment or Rizzi in and to the Property. Notwithstanding the foregoing, neither National Bank nor the Taxing Authorities shall be granted a post-petition lien in avoidance actions under Sections 544, 547, 548, 549 and 550 of the Bankruptcy Code.

7. This Final Order shall be binding on all parties in this case that ~~[illegible]~~ [had] notice hereof, including but not limited to, the Debtor and any successors thereto, ~~any Committee, and any Chapter 11 or Chapter 7 trustee that is appointed [illegible]~~, provided, however, that this Final Order is without prejudice to the rights of any party including any Committee, or any Chapter 11 or 7 trustee, to challenge the validity, amount, perfection, priority, extent or enforceability of the National Bank Pre-Petition Claim or the Rizzi Pre-Petition Claim or the pre-petition security interests of National Bank and/or Rizzi, ~~as long as any such challenge is made on or before 60 days from the date~~ [so long as any such challenge is made on or before 60 days from date of service] of this Final Order (or with respect to any appointed Committee or any Chapter 11 or 7 trustee, such challenge must be made on or

8248020.2

before 60 days after appointment of such Committee, or any Chapter 11 or 7 trustee), after which time all such challenges shall be deemed finally and conclusively barred. Nothing contained in the foregoing to the contrary shall limit MAC from challenging or objecting at any time, including after 60 days from entry of this order, the validity, amount, perfection, priority, or enforceability of National Bank's or any other creditor's pre-petition and/or post-petition interests and/or rights in and to the MAC Equipment.

8. Nothing in this Order shall constitute a finding regarding the adequacy of the adequate protection authorized hereunder, impair any party's rights to take other action permitted by the Bankruptcy Code or constitute a waiver of any Debtor default or of National Bank's rights under applicable law including, without limitation, section 506(b) of the Bankruptcy Code.

9. Any notice required by this Order to be served upon Debtor's counsel, shall be deemed to be delivered immediately if sent by facsimile transmission to Michael L. Gesas and Miriam R. Stein, Arnstein & Lehr LLP, 120 S. Riverside Plaza, Suite 1200, Chicago, IL 60606, facsimile: (312) 876-0288. Any notice required by this Order to be served upon National Bank's counsel shall be deemed to be delivered immediately if sent by facsimile transmission to Richard H. Fimoff, Robbins Salomon & Patt, Ltd. 25 E. Washington St., Suite 1000, Chicago, IL 60602, facsimile (312) 782-6690. Any notice required by this Order to be served upon Mario Rizzi's counsel shall be deemed to be delivered immediately if sent by facsimile transmission to Kate McCracken, Hosheit, McGuirk, McCraken & Cuscaden PC, 1001 E. Main St., Suite G, St. Charles, IL 60174, facsimile (630) 513-8799.

Dated: Dec 18, 2008

ENTER:

United States Bankruptcy Judge

DEC 18 2008

Agreed:
Nat'l Bank of Commerce
By Richard Fimoff
Atty

Mac Funding Corp
By [signature]
Atty

Mario Rizzi
By Kate McCracken
Atty.

8248020.2

# SCHEDULE A

# CASH COLLATERAL BUDGET

Granite Xperts
Cash Collateral Budget

| | | Budget Week 1 10/10/08 | Budget Week 2 10/17/08 | Budget Week 3 10/24/08 | Budget Week 4 10/31/08 | Budget Month 1 Oct '08 | Budget Week 5 11/07/08 | Budget Week 6 11/14/08 | Budget Week 7 11/21/08 | Budget Week 8 11/28/08 | Budget Month 2 Nov. '08 | Budget Week 9 12/05/08 | Budget Week 10 12/12/08 | Budget Week 11 12/19/08 | Budget Week 12 12/26/08 | Budget Week 13 01/02/09 | Budget Month 3 Dec. '08 | Budget Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Beginning Cash** | | 40,000 | 1,946 | 7,453 | 1,656 | 40,000 | 15,357 | 10,212 | 16,104 | 10,558 | 15,357 | 18,594 | (3,693) | 2,205 | 4,171 | 16,360 | 18,594 | 40,000* |
| Disbursements | | (71,007) | (38,702) | (36,307) | (27,478) | (173,494) | (51,201) | (31,435) | (42,209) | (28,812) | (153,658) | (61,326) | (33,324) | (48,829) | (29,742) | (63,761) | (236,963) | (564,136) |
| A/R Cash Receipts | | 2,911 | 15,202 | - | 8,997 | 27,709 | 20,000 | 13,815 | 13,150 | 10,984 | 57,950 | 10,984 | 11,168 | 22,741 | 22,741 | 23,916 | 91,550 | 177,210 |
| Deposits on Orders | | 30,042 | 28,408 | 30,510 | 32,183 | 122,143 | 26,056 | 23,513 | 23,513 | 25,864 | 98,945 | 28,055 | 28,055 | 28,055 | 19,189 | 24,688 | 128,042 | 348,129 |
| Adjustments / Other | | | | | | - | | | | | - | | | | | | - | - |
| Ending Cash | | 1,946 | 7,453 | 1,656 | 15,357 | 15,357 | 10,212 | 16,104 | 10,558 | 18,594 | 18,594 | (3,693) | 2,205 | 4,171 | 16,360 | 1,203 | 1,203 | 1,203 |
| | | (38,054) | 5,507 | (5,797) | 13,701 | (24,643) | (5,145) | 5,892 | (5,546) | 8,036 | 3,237 | (22,287) | 5,898 | 1,966 | 12,189 | (15,157) | (17,391) | (38,797) |
| **Estimated Billings** | | 43,938 | 43,938 | 43,938 | 43,938 | 175,750 | 44,674 | 47,025 | 47,025 | 51,728 | 190,451 | 56,109 | 56,109 | 56,109 | 38,379 | 49,376 | 256,083 | 622,284 |
| **Cost of Sales** | | | | | | | | | | | | | | | | | | |
| Material Granite | 25.0% | 10,984 | 10,984 | 10,984 | 10,984 | 43,938 | 11,168 | 11,756 | 11,756 | 12,932 | 47,613 | 14,027 | 14,027 | 14,027 | 9,595 | 12,344 | 64,021 | 155,571 |
| Wages - fabrication/ install (7 empl 17/hr 5 days/ wk | | 4,760 | 4,760 | 4,760 | 4,760 | 19,040 | 4,760 | 4,760 | 4,760 | 4,760 | 19,040 | 4,760 | 4,760 | 4,760 | 4,760 | 4,760 | 23,800 | 61,880 |
| Payroll taxes - all | 12.0% | 571 | 571 | 571 | 571 | 2,285 | 571 | 571 | 571 | 571 | 2,285 | 571 | 571 | 571 | 571 | 571 | 2,856 | 7,426 |
| Subcontract labor | 11.0% | 1,875 | 1,875 | 1,875 | 1,875 | 7,500 | 2,375 | 2,375 | 2,375 | 2,375 | 9,500 | 2,375 | 2,375 | 2,375 | 2,375 | 2,375 | 11,875 | 28,875 |
| Fabrication shop supplies | | 125 | 125 | 125 | 125 | 500 | 125 | 125 | 125 | 125 | 500 | 125 | 125 | 125 | 125 | 125 | 625 | 1,625 |
| Machinery Supplies & Expendable | | | | 750 | | 750 | | 750 | | | 750 | | 750 | | | | 750 | 2,250 |
| Machinery Parts & Repairs | | | 450 | | 450 | 900 | | 450 | | 450 | 900 | | 450 | | 450 | | 900 | 2,700 |
| Installation supplies | 1.00% | 439 | 439 | 439 | 439 | 1,758 | 447 | 470 | 470 | 517 | 1,905 | 561 | 561 | 561 | 384 | 494 | 2,561 | 6,223 |
| Fuel, tolls, plates | 0.75% | 330 | 330 | 330 | 330 | 1,318 | 335 | 353 | 353 | 388 | 1,428 | 421 | 421 | 421 | 288 | 370 | 1,921 | 4,667 |
| Truck repairs | | 125 | | 125 | | 250 | 125 | | 125 | | 250 | 125 | | 125 | | 125 | 375 | 875 |
| | | | | | | - | | | | | - | | | | | | - | - |
| Total Cost of Sales (Cash Basis) | | 19,209 | 19,534 | 19,959 | 19,534 | 78,238 | 19,906 | 21,610 | 20,535 | 22,118 | 84,171 | 22,965 | 24,040 | 22,965 | 18,548 | 21,164 | 109,683 | 272,092 |
| **Operating Expenses** | | | | | | | | | | | | | | | | | | |
| Officer salaries (1 week in arrears) (2 individuals) | | 5,000 | | 5,000 | | 10,000 | 5,000 | | 5,000 | | 10,000 | 5,000 | | 5,000 | | 5,000 | 15,000 | 35,000 |
| Wages office (3 employees) | | 3,950 | | 3,950 | | 7,900 | 3,650 | | 3,350 | | 7,000 | 3,350 | | 3,350 | | 3,350 | 10,050 | 24,950 |
| Wages Studio 41 (2 current employees) | | | | | | - | - | | 2,400 | | 2,400 | 2,400 | | 2,400 | | 2,400 | 7,200 | 9,600 |
| Outside Sales (1) | | 1,200 | | 1,200 | | 2,400 | 1,200 | | | | 1,200 | | | | | | - | 3,600 |
| Sales wages & commissions (5% on 1/2 of Sales) | 4% | | | | | - | | | 2,292 | | 2,292 | 2,469 | | 2,805 | | 2,362 | 7,636 | 9,929 |
| Payroll taxes | 12% | 1,521 | - | 1,523 | - | 3,045 | 1,478 | - | 1,956 | - | 3,434 | 1,983 | - | 2,033 | - | 1,967 | 5,983 | 12,462 |
| Office expense | | 100 | 100 | 100 | 100 | 400 | 100 | 100 | 100 | 100 | 400 | 100 | 100 | 100 | 100 | 100 | 500 | 1,300 |
| Telephone | | | | 750 | | 750 | | | 750 | | 750 | | 750 | | | | 750 | 2,250 |
| Auto (Car allowance / Fuel) | | 450 | | 450 | | 900 | 450 | | 450 | | 900 | 450 | | 450 | | 450 | 1,350 | 3,150 |
| Electric | | | 2,500 | | | 2,500 | | 2,500 | | | 2,500 | | | | 2,500 | | 2,500 | 7,500 |
| Natural Gas | | 100 | | | 250 | 350 | | | 1,000 | | 1,000 | | | | 1,000 | | 1,000 | 2,350 |
| Water Sewer | | 150 | | | | 150 | 150 | | | | 150 | 150 | | | | | 150 | 450 |
| Waste Removal | | | 600 | | | 600 | | 600 | | | 600 | | | 600 | | | 600 | 1,800 |
| Health insurance (None) | | | | | | - | | | | | - | | | | | | - | - |
| Workmens Comp & GL | | 3,050 | | | | 3,050 | 3,050 | | | | 3,050 | | 3,050 | | | | 3,050 | 9,150 |
| Rent Studio 41 (6 locations w/ 2 locations w/ GX SM) | | | | | | - | | | | | - | 11,000 | | | | 11,000 | 22,000 | 22,000 |
| Credit card & bank fees | | 250 | 250 | 250 | 250 | 1,000 | 250 | 250 | 250 | 250 | 1,000 | 250 | 250 | 250 | 250 | 250 | 1,250 | 3,250 |
| Postage & delivery | | 25 | | 25 | | 50 | 25 | | 25 | | 50 | 25 | | 25 | | 25 | 75 | 175 |
| Printing | | | 25 | | 25 | 50 | | 25 | | 25 | 50 | | 25 | | 25 | | 50 | 150 |
| Computer software, licenses & repairs | | 100 | 100 | 100 | 100 | 400 | 100 | 100 | 100 | 100 | 400 | 100 | 100 | 100 | 100 | 100 | 500 | 1,300 |
| Dues & subscriptions | | | | | | - | | | | | - | | | | | | - | - |
| Advertising | | | | | | - | | | | | - | | | | | | - | - |
| License & fees | | | | | 1,000 | 1,000 | | | 1,000 | | 1,000 | | | | 1,000 | | 1,000 | 3,000 |
| Real estate taxes ($36,960 Due) | | | | | 5,969 | 5,969 | | | | 5,969 | 5,969 | | | | 5,969 | | 5,969 | 17,907 |
| Security Deposits (electric / Other? ) | | 4,000 | | | | 4,000 | | | | | - | | | | | | - | 4,000 |
| Miscellaneous | | 500 | 250 | 500 | 250 | 1,500 | 500 | 250 | 500 | 250 | 1,500 | 500 | 250 | 250 | 250 | 250 | 1,500 | 4,500 |
| Total Operating Expenses | | 20,398 | 3,825 | 13,848 | 7,944 | 46,014 | 15,953 | 3,825 | 19,174 | 6,694 | 45,645 | 27,777 | 4,525 | 17,364 | 11,194 | 27,254 | 88,113 | 179,773 |

Granite Xperts
Cash Collateral Budget

| | Budget Week 1 10/10/08 | Budget Week 2 10/17/08 | Budget Week 3 10/24/08 | Budget Week 4 10/31/08 | Budget Month 1 Oct '08 | Budget Week 5 11/07/08 | Budget Week 6 11/14/08 | Budget Week 7 11/21/08 | Budget Week 8 11/28/08 | Budget Month 2 Nov. '08 | Budget Week 9 12/05/08 | Budget Week 10 12/12/08 | Budget Week 11 12/19/08 | Budget Week 12 12/26/08 | Budget Week 13 01/02/09 | Budget Month 3 Dec. '08 | Budget Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Bank Charges** | | | | | | | | | | | | | | | | | |
| Mortgage Interest (12%) (4 months past Due) | | 8,564 | | | 8,564 | 8,564 | | | | 8,564 | 8,564 | | | | 8,564 | 17,128 | 34,256 |
| Term Loan Interest (12%) (4 months past due) | | 2,020 | | | 2,020 | 2,020 | | | | 2,020 | 2,020 | | | | 2,020 | 4,040 | 8,080 |
| Truck Payment (8.95%)(P&I) (3 months past due) | | 745 | | | 745 | 745 | | | | 745 | | 745 | | | 745 | 1,490 | 2,980 |
| M/E Water Jet (5.5% (P&I) (1st payment due) | | 4,014 | | | 4,014 | 4,014 | | | | 4,014 | | 4,014 | | | 4,014 | 8,028 | 16,055 |
| **Total Bank Charges** | - | 15,343 | - | - | 15,343 | 15,343 | - | - | - | 15,343 | 10,584 | 4,759 | - | - | 15,343 | 30,686 | 61,371 |
| **Professional Fees** | | | | | | | | | | | | | | | | | |
| Professional | 5,000 | | | | 5,000 | | 2,000 | | | 2,000 | | | 2,000 | | | 2,000 | 9,000 |
| Legal | 26,400 | | | | 26,400 | | 4,000 | | | 4,000 | | | 4,000 | | | 4,000 | 34,400 |
| Accounting | | | 2,500 | | 2,500 | | | 2,500 | | 2,500 | | | 2,500 | | | 2,500 | 7,500 |
| **Total Professional Fees** | 31,400 | - | 2,500 | - | 33,900 | - | 6,000 | 2,500 | - | 8,500 | - | - | 8,500 | - | - | 8,500 | 50,900 |
| **Total Cash Disbursements** | 71,007 | 38,702 | 36,307 | 27,478 | 173,494 | 51,291 | 31,435 | 42,209 | 28,812 | 153,658 | 61,326 | 33,324 | 48,829 | 29,742 | 63,761 | 236,983 | 564,136 |
| **Cumulative Cash Disbursements** | | 109,709 | 146,016 | 173,494 | | 224,696 | 256,131 | 298,341 | 327,153 | 327,153 | 388,479 | 421,803 | 470,633 | 500,374 | 564,136 | 564,136 | |

1) Studio 41 Rent - GX will be on site at 2 locations in Highland Park and Chicago ($5,500 each) /starts Dec. 1st
2) Sales include one (1) kitchen per day for Studio 41 starting November 1st
3) Taxes paid for '07 1st installment - 2nd installment due - unknown if escrow covers some portion
4) $2,2,34 due on Toyota
5) Water Jet new - First payment due
6) Approx. 4 payments past due with bank
7) Default interest 12% on Bank debt
8) Sale level based on management's projection at 95%.
9) Need new W/C policy in place
10) Gradual increase in through Nov and Dec. stem from the base of remodel work prior to the holiday and new contract with Studio 41
11) Signed 5 year exclusive countertop fabrication contract with Studio 41. Studio has 6 showrooms
12) Est. 60 outside sales people of Studio 41 dedicated to sending all customers to GX for countertops
13) we are given every layout to provide estimate for countertop along with opportunity to sell directly to the customer
14) signed contract with Epstein International for 300 units (kitchens + bathrooms)